FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 14, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SATNAM S. RANDHAWA,<br><br>Plaintiff,<br><br>v.<br><br>PHILIP MARKER and MARK FOSTER,<br><br>Defendants. | No. 4:24-CV-05027-SAB<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendants' Motion for Summary Judgment, ECF No. 41. Defendants are represented by Alica Mac. Plaintiff is a prisoner at the Washington State Penitentiary who is representing himself in this matter.

Plaintiff brings this action alleging a violation of the Equal Protection Clause of the U.S. Constitution when he was demoted while working in the Washington State Penitentiary prison kitchen during his incarceration. Defendants now move for summary judgment.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1**

verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### Facts

Plaintiff Satnam Randhawa began working for Correctional Industries in December 2018. He worked as a food preparation worker under SOC code 35-2021 until approximately September 2019 when he began working in the back dock area of the kitchen under SOC code 43-9061. During his time working with Correctional Industries, Plaintiff received positive behavior observations by staff. On September 14, 2020, Defendant Phillip Marker recommended Plaintiff receive Level IV pay under SOC code 43-9061. Plaintiff continued to work in the back dock area of kitchen under SOC code 43-9061 until October 2022, when he was moved to the recycle area of the kitchen under SOC code 37-2011.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 2

On October 6, 2022, Plaintiff was working in the kitchen in the back dock area with another incarcerated individual, Kenneth Linville. They were the only two incarcerated workers on the back dock and they were responsible for loading prepared meals on carts that were sent to the housing units to be passed out to the inmates. Both Plaintiff and Linville were at Level IV pay for SOC code 43 9061 on this date and both were housed in the Victor unit.

On that same day, Defendant Marker was working in the back dock area of the kitchen where carts were being loaded. He searched the carts that day prior to them being sent to the units and discovered several concealed and unauthorized food items in the cart going to the Victor living unit. The cart had (1) one block of sliced cheese hidden in a corn muffin box that was retaped and closed; (2) 36 chicken breasts in the bottom of the carts beneath the hot trays; (3) 2 blocks of butter hidden in the diet tote; and (4) four salt shakers and four pepper shakers.

The next day, Defendant Marker met with Plaintiff and Linville. According to Marker, Plaintiff denied stealing the food, but Linville stated, "It was me. He had nothing to do with it." Plaintiff then left, and Linville said he didn't want to lose his job and asked if his pay could be taken away or moved to a different position.

Prior to this day, Plaintiff had been involved in other incidents of food theft of small items and had been verbally counseled related to the incidents. On the other hand, Kenneth Linville had worked in the back dock area for approximately six years and had no incidents of food theft to which Defendant Marker was aware. According to Linville, however, he had taken food before but had not been caught.

In his declaration, Defendant Marker stated that during his time working as a Correctional Industries Supervisor Assistant, there were incidents where individuals would steal a small item from the kitchen. When this happened, he and other staff would often verbally counsel the individual and allow them a chance to improve their behavior and continue their employment with Correctional

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 3**

Industries. An individual who steals food may be infracted for either a serious infraction (value is than $10) or general infraction (value is less than $10). If Plaintiff or Linville were infracted for the October 6, 2022 incident, they would have been terminated from their Correctional Industries employment. The decision was made to not infract Plaintiff or Linville for this particular incident but rather to impose a more lenient punishment.

Plaintiff was moved out of the back dock area of the kitchen and began working in the recycling area under SOC code 37-2011 and demoted from Level IV pay to Level III pay. Because he did not have the requisite number of hours in this type position, he did not qualify for Level IV pay. Plaintiff voluntarily resigned from his position with Correctional Industries on October 9, 2023.

Linville remained on the back dock and under SOC Code 43-9061. He was supposed to be demoted from a Level IV to a Level III for one to two months, but according to Linville, he never received a reduction in his paycheck.

From October 2020 to December 2023, the back dock workforce consisted of a diverse group of individuals, including eight African-American individuals, two white individuals (one of whom was Linville), a Chicano/Hispanic individual, and Plaintiff, an Indian.

In December 2023, Linville was infracted for stealing food and was terminated from his position.

<strong>Legal Framework</strong>

**1.      Equal Protection Clause**

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying to "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The central inquiry in an Equal Protection Clause claim is whether a government action was motivated by a discriminatory purpose." *Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022). "'Discriminatory purpose' . . .implies more than intent as volition or intent as awareness of

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4**

consequences. It implies that the decision maker . . .selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (citations omitted).

A plaintiff may prove an Equal Protection claim in two ways. First, a plaintiff may show that a defendant acted with an intent or purpose to discriminate against the plaintiff based upon their membership in a protected class. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Second, if the action in question does not involve a plaintiff's membership in a suspect class, a plaintiff may establish an equal protection claim under the "class of one" theory by showing they were intentionally treated differently from other similarly situated individuals without a rational basis for the difference in treatment.[1] *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008).

### 2.    Qualified Immunity

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages" when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established only when "[t]he contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Court must decide "whether 'the officer's conduct violated a constitutional right' and whether 'the right was clearly established' at the time of the alleged misconduct." *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011) (quotation omitted). The Court's qualified immunity analysis may proceed in any order. *Id.*

---

[1] In his Response, Plaintiff stated he was not alleging a class-of-one theory so the Court will not address Defendants' arguments on this theory.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5**

**Analysis**

First, Defendants are entitled to qualified immunity. Plaintiff asserts Defendants gave preferential treatment to a white inmate in making their employment decisions. Plaintiff has not shown it is clearly established that a one-time demotion of pay and movement to another area in the kitchen could violate his constitutional rights. A reasonable individual would not know that making discretionary personnel decisions within the prison kitchen (where they supervise approximately 27 incarcerated individuals), specifically a demotion and moving an individual to another position within the kitchen, as opposed to an infraction or termination when theft is suspected, would amount to a constitutional violation.

Second, there is nothing in the record to suggest Plaintiff's move from the back dock to the recycling position was taken because of Plaintiff's race. Notable, it appears that to the extent co-Defendant Marker was involved in this decision, there is nothing in the record to suggest that he harbored any racial animosity toward Plaintiff. On the contrary, the record demonstrates that co-Defendant Marker previously gave Plaintiff a positive review and recommended him for a pay level increase. No reasonable jury could find that Plaintiff was demoted on account of his race.

And the record suggests that Plaintiff did not necessarily believe the move from the back dock to the recycling position was objectionable.[2] Rather, the focus of Plaintiff's challenge was his demotion from Level IV to Level III, and the corresponding pay decrease. He asserts the demotion was on account of his race.

However, it is undisputed that the reduction in his pay level was because of the move to a different position. After Plaintiff was moved to the recycling

---

[2] During the Resolution Review process, Plaintiff stated he was not interested in being on the back dock anymore. Rather, he just wanted to be at Level IV. ECF No. 44-2.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6**

position, he was paid at Level III, because he did not have the requisite number of hours in that position to qualify for Level IV.[3]  And again, there is nothing in the record to suggest the reduction in pay was on account of his race. No reasonable jury could find that Plaintiff's reduction in pay was on account of his race.

The fact that Linville never received the intended temporary decrease in pay does not prove that Defendants intentionally discriminated against Plaintiff. Rather, it appears to be the result of a timing issue with the payroll system. Even so, Plaintiff has not shown that he and Linville were similarly situated. Plaintiff had prior known thefts of food and Linville did not. No reasonably jury could find that Plaintiff and Linville were similarly situated or that Linville received preferential treatment.

**3. Conclusion**

Based on the record before the Court, no reasonable jury could find that Defendants discriminated against Plaintiff on account of his race. Moreover, Defendants are entitled to qualified immunity because it is not clearly established that a one-time employment decision based on suspected food theft would amount to a constitutional violation.

//

//

//

//

---

[3] According to DOC Policy 710.400, an I/I worker must accrue 1500 hours in one SOC Code, among other requirements, to be eligible for a Level 4. When Plaintiff was working in the back dock, he was in a clerk position. As of April 13, 2023, he had 1152 hours at SOC Code as "janitor & cleaner: recycle, which did not qualify him for a level 4 at that time.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 7**

Accordingly, **IT IS HEREBY ORDERED**:

1.  Defendants' Motion for Summary Judgment, ECF No. 41, is **GRANTED**.

2.  The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff.

**IT IS SO ORDERED**. The Clerk of Court Clerk is directed to enter this Order, provide a copy to Plaintiff and counsel, and **close** the file.

**DATED** this 14th day of July 2026.



Stan Bastian
Chief United States District Judge

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 8**